RECEIVED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

2008 NOV 18 PM 1: 18

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORID
FORT MYERS, FLORIDA

**DANIEL W MCMAHON,**
**CAROLYN STEPP**
**Plaintiffs, Pro se**

**v**                                        **CASE NO. 2:06-cv-00179-MMH-SPC**

**DON HUNTER,**
**JOSE LOPEZ,**
**LYNN BUTLER**
**DAVID JOLICUR [sic]**
**FURTADA [sic] (Dispatcher on 7/1/08)**
**STEVEN YOUNG**
**ROBERT CAPIZZI**
**CHRISTINE BATES**
**THERESA WRIGHT**
**DAVID SIEBER**
**DIANE SULLIVAN**
**TURNER (PRB)**
**PEGGY DOE (IN PRB)**
**HAMILTON (Supervisor in Golden Gate Area)**
**JOHN DOES 14, 15 (Dispatchers/deputies Working with Furtada)**
**JOHN DOE 1, 2 (Wearing Gilley Suit on 7/1/08)(1) AND (2) without gilley suit.**
**JOHN DOES (Who Went to Plaintiffs Home on 7/1/08)(24++)**
**JOHN DOES (Who Went to Plaintiffs Home on 7/11/08)(20-23)**
**JOHN DOES (Who Went to Plaintiffs Home on 7/29/08)(3-8)**
**JOHN DOE (Who Went to Plaintiffs Home on 8/16/08)(9)**
**JOHN DOE (Who Went to Plaintiffs Home on 8/26/08)(10)**
**JOHN DOE (Who Went to Plaintiffs Home on 9/11/08)(12)**
**JOHN DOES (Who Called Plaintiff on 9/12/08 and 9/16/08)(18-19)**
**JOHN DOES (Who Went to Plaintiffs Home in October 2008)(13, 17)**
**Defendants:**

**PROPOSED SECOND AMENDED COMPLAINT**

Plaintiffs, DANIEL W. MCMAHON, and CAROLYN STEPP, sue Defendants, and allege:

## JURISDICTIONAL ALLEGATIONS

1. This is an action brought pursuant to Title 42 U.S.C., Section 1983, Title 42 U.S.C., Section 1985, Title 42 U.S.C., Section 1986, 42 U.S.C. §§ 12101 et seq. Title 42 U.S.C. Section 12132, Title 42 U.S.C. Section 12203, 29 U.S.C. § 794 and Title 28 U.S.C., Section 1343, seeking injunctive relief and damages against the Defendants for committing acts under the color of state law, which deprived Plaintiffs of rights secured by the First, Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has original jurisdiction pursuant to Title 28 U.S.C., Sections 1331.

2. Plaintiffs seek Supplemental Jurisdiction of the Court against various Defendants for injunctive relief pursuant to 28 U.S.C. Section 1367 in that such claims derive from a common nucleus of operative facts and are so related to the claims in this action within the Court's original jurisdiction that they form part of the same controversy.

3 . The violation of MCMAHON'S's and STEPP'S rights alleged herein were committed within Collier County, Florida and venue is proper in this district pursuant to 28 U.S.C. section 1391.

## PARTIES

4. Plaintiff MCMAHON is disabled under the definition of the Americans With Disabilities Act and the Rehabilitation Act. MCMAHON has a physical or mental impairment that substantially limits one or more of his major life activities, such as working, and his ability to get along with others. MCMAHON has a record of such an impairment and is regarded as

Page 2 of 73

having such an impairment by the CCSO, Collier County Court, David Lawrence Center and others. MCMAHON is an exiled resident of Collier County Florida.

5. Plaintiff STEPP is an exiled resident of Collier County Florida

6. Defendant Don Hunter (HUNTER) was at all times material hereto, Sheriff of Collier County, Florida and was acting in his official capacity and individually, and in concert and conspiracy with other Defendants under the color of authority of the laws of the State of Florida.

7. Defendant Jose Lopez (LOPEZ) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert and conspiracy with other Defendants under the color of authority of the laws of the State of Florida.

8. Defendant Lynn Butler (BUTLER) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida.

9. Defendant David Jolicur (JOLICUR) [sic] was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida.

10. Defendant Furtada (FURTADA) [sic] (Dispatcher on 7/1/08) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

11. Defendant Steven Young (YOUNG) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

12. Defendant Robert Capizzi (CAPIZZI) was at all times material hereto, employed by

the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

13. Defendant Christine Bates (BATES) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

14. Defendant Theresa Wright (WRIGHT)(PRB) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

15. Defendant David Sieber (SIEBER) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

16. Defendant Diane Sullivan (SULLIVAN)(PRB) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

17. Defendant Turner (TURNER) (PRB) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

18. Defendant Peggy (PEGGY DOE) (IN PRB) was at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and in concert with other Defendants under the color of authority of the laws of the State of Florida

19. All Defendants JOHN AND JANE DOES (as numbered) were at all times material hereto, employed by the Office of the Sheriff of Collier County and was acting individually, and

in concert with other Defendants under the color of authority of the laws of the State of Florida

## GENERAL ALLEGATIONS

20. On or about the 24th of October 2003, Plaintiff (MCMAHON who is disabled ) was at the Cleveland Clinic Naples. After leaving his Doctors appointment Plaintiff met Defendant PAYNE in the parking lot of the Clinic. PAYNE told MCMAHON that his dogs had been taken by Domestic Animal Services (DAS) to a veterinarian. PAYNE told MCMAHON his dogs were ok. PAYNE told MCMAHON that he may receive something in the mail about the dogs. PAYNE reiterated that the dogs were fine.

21. MCMAHON then went to make a phone call from inside the Clinic.

22. When MCMAHON returned he was again met by PAYNE. PAYNE and a security guard from the Clinic began asking MCMAHON questions about blowing up the clinic with a car bomb.

23. DAS had taken MCMAHON'S dogs to a veterinarian. DAS did not have the veterinarian examine 2 dogs The veterinarian had examined 1 dog. The veterinarian had found that dog's temperature to be normal. The veterinarian had found the dog had not been abused. The veterinarian released the dog back to DAS at 12:00 Noon. on or about the 24th of October 2003

24. While the questioning about bomb building continued, DAS returned with MCMAHON'S dogs.

25. PAYNE then on or about 12:35 pm on the 24th of October 2003 Placed MCMAHON in handcuff, and MCMAHON was arrested and put into PAYNE'S patrol car. PAYNE may

have been unaware that MCMAHON'S' dog, Paca had been released by the vet and not been abused.

26. PAYNE May have been unaware that the thermometer used to measure the dogs tempurature at the clinic was not being used as per its directions and was designed fo use in home heating and cooling and did not accurately measure Paca's temperature.

27.. MCMAHON was then taken against his will to the Collier County Sheriff's Jail and was booked and charged with cruelty to animals.

28.. MCMAHON was placed in a cell with food, garbage, and urine on the floor

29.. The questions about bomb building continued at the Sheriff's Jail.

30. The charges were nolle prosed by the State.

31. On or about the 18th of December 2003, Plaintiff, MCMAHON had an appointment at the Cleveland Clinic Naples.

32. On or about the 18th of December 2003 MCMAHON received a letter from the Cleveland Clinic in Weston Florida terminating his patient relationship with the Cleveland Clinic Naples effective 30 days after receipt of the letter.

33. MCMAHON then called the Cleveland Clinic Naples to reconfirm his appointment for that same day.

34. MCMAHON'S Doctor's office reconfirmed the appointment.

35. MCMAHON'S Doctor's office told MCMAHON to bring the letter and to call who ever had sent it.

36. MCMAHON then called the sender of the letter but was referred to Annette Gadus.

37. Gadus was not in her office but staff from Gadus' office told MCMAHON not to

attend his Doctor's appointment.

38. MCMAHON then contacted his Doctor's office who told him to ignore Gadus's office and that they would deal with the security department.

39. MCMAHON then got a call from Gadus who told him not to attend his appointment and not to listen to the doctor.

40. MCMAHON honored Gadus's request even though it was against medical advice.

41. The following day, On or about the 19th of December 2003, MCMAHON got a call from the Cleveland Clinic Naples reminding him to attend his appointment on the 22nd of December 2003.

42. On or about the 22nd of December 2003 MCMAHON called his Doctor's office to reconfirm the appointment he had scheduled.

43. MCMAHON did reconfirm his Doctors appointment with his Doctors office.

44. MCMAHON's Doctors office told MCMAHON if he had trouble with the security department, that MCMAHON could be seen in the emergency room.

45. MCMAHON then got a call from Gadus. Gadus told MCMAHON not to attend his appointment.

46. MCMAHON told Gadus that he was not going to ignore his Doctor again and would attend the appointment.

47. MCMAHON then got a call from Defendant LOPEZ.

48. LOPEZ told MCMAHON if he attended his appointment he would be arrested.

49. MCMAHON told LOPEZ that the Doctor had agreed to see him in the Emergency Room.

50. LOPEZ told MCMAHON if he showed up at the emergency room he would be arrested.

51. MCMAHON protested that it was against the law to deny access to an emergency room. Lopez told MCMAHON that he could not call the Clinic or his Doctor or he would be arrested.

52. MCMAHON also told LOPEZ about his communication disability and asked for an accommodation under the Americans with Disabilities Act.

53. LOPEZ told MCMAHON that if he ever called or was seen at the Cleveland Clinic again for any reason, MCMAHON would be arrested.

54. MCMAHON protested to LOPEZ that his Doctor wanted to see him.

55. LOPEZ told MCMAHON to never call his Doctor or the Clinic ever again about anything even if MCMAHON was dead.

56. MCMAHON never called the Cleveland Clinic Naples again. LOPEZ then used falsified documents in his report that were provided by the Clinic. LOPEZ did not follow the Sheriffs Department's guideline regarding repeated telephone calls. LOPEZ did not use the *57 system of the telephone company as is customary for repeated or harassing telephone calls.

57. MCMAHON then complained to the Collier County Sheriff's Office about the incident and the threat he could not speak to his Doctor.

58. MCMAHON also complained to the State Attorney's Office because MCMAHON felt he had lost some of his rights under the 1st Amendment.

59. MCMAHON then filed an internal complaint with the Collier County Sheriff's

Office, Professional Responsibility Bureau (PRB) about LOPEZ'S actions.

60. When LOPEZ found out about the complaint against him, he conspired with VERICKER of the State Attorney's Office (SAO) to clear himself of the internal complaint.

61. On or about the 19th of March 2004 LOPEZ met with VERICKER and conspired against MCMAHON.

62. On or about the 24th of March 2004 VERICKER knowingly and with reckless disregard for the laws issued a baseless and false arrest warrant against MCMAHON. VERICKER knowingly made false statements of fact for and in the arrest warrant. The warrant was based on a complaint which stated the intent of MCMAHON'S calls were for medical issues. VERICKER issued warrant for intent to make repeated calls to harass under Florida Statute 365.16(d) which states in part;

*Whoever: Makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number, is guilty of a misdemeanor of the second degree*

63. VERICKER knowingly, recklessly, and maliciously used a law for which it was not intended in order to free LOPEZ from an internal complaint. The warrant was based on the sworn statement of Annette Gadus which in part said, "MCMAHON was calling Cleveland Clinic for assistance with his medical problems." MCMAHON could have been charged with the same offense without the arrest, although MCMAHON's calls were for medical reasons as stated in Gadus's sworn statement and therefore clearly did not violate the law. MCMAHON simply could have been served a summons to appear in Court. MCMAHON obeyed the orders of LOPEZ and had not called the Clinic after being warned by LOPEZ.

64. LOPEZ used fake evidence to secure a conviction against MCMAHON. The

telephone records used were inaccurate and were not within the Sheriff's Office's procedure or policy. The Collier County Sheriff's Office policy or procedure is to use the *57 system for repeated telephone calls with the intent to harass. LOPEZ did not use the *57 service nor did he ever direct the Cleveland Clinic to use the service.

65. On or about the 31st of March 2004 MCMAHON was arrested at his home for repeated telephone calls with the intent to harass.

66. MCMAHON was then transported to the Collier County Sheriff's Jail where he was handcuffed.

67. MCMAHON was then treated differently than the other prisoners, and was first segregated from them.

68. MCMAHON was then placed in the main area of the jail despite bail being posted.

69. MCMAHON was placed into a cell with an accused murderer away from all of the other prisoners.

70. After MCMAHON'S second false arrest VERICKER began looking for a defense attorney for MCMAHON,

71. Attorney Roger Craig was contacted by the prosecution and asked to defend MCMAHON. Roger Craig was told by the prosecution that MCMAHON had psychiatric problems.

72. Roger Craig called MCMAHON and told him that he was contacted by the State Attorney's Office (SAO) requesting that he defend MCMAHON. CRAIG told MCMAHON that he could make the whole thing go away and had been advised of such by the SAO. MCMAHON used a Court appointed attorney for his defense in the fraudulent action.

73. The charges for repeated telephone calls with the intent to harass were Nolle Prosed by the State of Florida.

74. On or about the 29th of April 2004, HUNTER'S office issued a "Be On The Look Out" (BOLO) for MCMAHON stating something about MCMAHON seeking his civil rights. The information was disseminated to law enforcement throughout Collier County including the Naples Police Department (NPD) where it was viewed by STEPP who took notice of the information contained in the BOLO, it was also possibly disseminated beyond Collier County. This was directly against the CCSO's requirement under the ADA to make reasonable modifications to policies, practices, or procedures to prevent discrimination on the basis of disability and was to discriminate against MCMAHON on the basis of his disability.

75. NPD destroyed the BOLO because it did not contain any information of value. MCMAHON requested a copy of the BOLO from the CCSO under Florida's sunshine law. The CCSO responded by stating that the BOLO never existed. MCMAHON then made the same request to the NPD, the NPD stated they had destroyed the BOLO, however MCMAHON did receive internal emails from the NPD about the BOLO and its destruction.

76. MCMAHON then again requested the BOLO from the CCSO, the CCSO then responded stating that the BOLO was not a public record under Florida law and was exempt from the sunshine law because it was an ongoing criminal investigation. MCMAHON then requested a copy of the BOLO when there was no longer a criminal investigation.

77. To this day MCMAHON has not received a copy of the BOLO viewed by STEPP. In March of 2006 MCMAHON sent the CCSO a letter of intent to sue for violations of MCMAHON'S civil rights.

78. On or about the 3rd of April 2006 MCMAHON filed this action against Sheriff Hunter and other Defendants.

79. On or about the 18th of July 2007 MCMAHON amended his complaint against Hunter and other Defendants.

80. In January 2008, while seeking rights under the ADA, MCMAHON was ejected from the Collier County Court by CCSO deputies SOLOMON, GREEN and JOHN DOE #16 for seeking his ADA rights. MCMAHON told the deputies that he was only seeking his civil rights. MCMAHON was told by JOHN DOE #16 that if he continued he would go to jail. MCMAHON then filed a complaint with the Professional Responsibility Bureau (PRB) of the CCSO. MCMAHON did not receive any response to this complaint.

81. Next in June of 2008 after VERICKER'S dismissal from this case MCMAHON was pulled over while driving for a welfare check by LYNN BUTLER of the CCSO. Deputy BUTLER kept asking MCMAHON if he needed an ambulance, after awhile Deputy BUTLER allowed MCMAHON to leave. BUTLER was also involved in another stop of MCMAHON the previous year when MCMAHON was issued a ticket for no proof of insurance despite the fact that MCMAHON had the proof but the Deputies refused to take it during the stop.

82. MCMAHON then had to go to Court about the ticket only to find the Deputies had just filed a Motion to dismiss. The Ticket was dismissed by the Court but this did cause MCMAHON a great deal of additional stress and inconvenience.

83. Also in June of 2008 Deputies began driving by MCMAHON'S home during daylight and then driving by at night including one in which 4 deputies came by while MCMAHON was sleeping( about 1030pm). Plaintiff STEPP noticed the patrol cars in front of

the home and turned on the porch light, when she did so all of the patrol cars immediately left the scene.

84. MCMAHON and STEPP'S home is located in a very rural part of Collier County and on a long private road with several no trespassing signs along the road.

85. On July 1, 2008 MCMAHON again sought an accommodation under the ADA from the Collier County Sheriff's Office (CCSO) for repeated misunderstandings and harassment MCMAHON was facing at the hands of the CCSO.

86. MCMAHON spoke to Defendant FURTADA at the CCSO via telephone in order to achieve the accommodation at about 1650 hours on the 1st of July 2008 and the phone call was recorded by the CCSO. This phone call lasted about 36 minutes and ended with MCMAHON agreeing that it would be best to address the issue the following day with the CCSO's Victim Assistance Dept.

87. FURTADA knew MCMAHON was only seeking his civil and ADA rights, FURTADA conspired with others (JOHN DOES 14 and 15) in the dispatch office to deprive MCMAHON of his right to be free from unlawful search, seizure, restraint and detention against his will and otherwise deprived Plaintiff MCMAHON of due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, and the ADA.

88. FURTADA conspired with and communicated with other JOHN DOES via a computerized system to deprive Plaintiff MCMAHON of his right to be free from unlawful search, seizure, restraint and detention against his will and otherwise deprived Plaintiff MCMAHON of due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, and the ADA

89. At the same time as the above call, HUNTERS SWAT team (JOLIKER, JOHN DOES 1 AND 2, JOHN DOES #s 24 to unknown), was assembling outside the Plaintiffs home. FURTADA communicated with others at or near MCMAHON'S home and did not inform MCMAHON that he needed to exit his home and speak to the Deputies outside, thus endangering MCMAHON'S life.

90. FURTADA conspired to interfere with his civil rights.

91. FURTADA knew MCMAHON was only seeking his civil and ADA rights.

92. FURTADA obstructed, impeded and hindered MCMAHON in representing himself in this Court by creating a situation where MCMAHON was forced to leave his home and this Court's jurisdiction in an unorganized manner. She and JOHN DOES 14 and 15 knew the SWAT team was assembling outside of the Plaintiffs home, yet she gave the impression that no one was outside. FURTADA asked MCMAHON if he wanted her to send a Deputy or an unmarked car that has no tinted windows driven by a civilian to accommodate MCMAHON under the ADA. This was a blatant lie and put MCMAHON'S life in jeopardy.

93. JOHN DOES #s 14 and 15 also communicated with others at or near MCMAHON'S home and did not inform MCMAHON that he needed to exit his home and speak to the Deputies outside, thus endangering MCMAHON'S life and conspiring to interfere with his civil and ADA rights.

94. All defendants, except possibly LOPEZ, obstructed, impeded and hindered MCMAHON in representing himself in this Court.

95. After speaking with the CCSO, MCMAHON attempted to call his wife, who was late from work. MCMAHON'S calls went unanswered because BUTLER of the CCSO had stopped

MCMAHON'S wife STEPP and had detained her and taken her phone against STEPP'S will. STEPP requested to leave several times but her requests were ignored. STEPP then heard that the SWAT team had 3 "targets". STEPP then believed the CCSO was about to kill her dogs and yelled for them not to kill her pets.

96. While MCMAHON was attempting to call his wife, a deputy Dave JOLICUR called the Plaintiffs residence and left a message on his voice mail that he was outside of the Plaintiffs home responding to MCMAHON'S call. JOLICUR stated he was not going to go away until he had spoken with MCMAHON. Deputy JOLICUR and other John or Jane DOES 24+ began to create an armed standoff at the Plaintiffs residence by hiding in the woods and brush around the Plaintiffs home instead of simply telling MCMAHON while he on the phone that there were, in fact, Deputies all around the Plaintiffs home and he needed to come out.

97. The Deputies outside MCMAHON'S home could have simply rung the door bell, knocked on the door, honked their horn or siren.

98. None of this was done and instead they conspired to violate MCMAHON'S rights for making an ADA request and for seeking his civil rights and as retaliation for this action, and prepared a grenande to launch into MCMAHON and STEPP'S home.

99. MCMAHON continued to call his wife's phone and was unaware of the voice mail message left by JOLICUR. At the same time STEPP was yelling at deputies to not launch the grenade. Afer several calls MCMAHON'S wife answered her phone and STEPP told MCMAHON "Dan there are hundreds of cops outside around the house looking for you, you need to come out with your hands up".

100. MCMAHON immediately complied with her request and came out with his hands

raised and wearing only shorts.

101. MCMAHON was ordered to move away from his house and to get face down on the ground with his hands raised above his back. MCMAHON fully complied with these orders. While face down on the ground a deputy wearing a gilley suit (Defendant JOHN DOE #1) yelled at MCMAHON "I am going to kill you, I am going to kill you right now!"

102. MCMAHON was then handcuffed at the same time as his neighbor, Deputy, Chuck Campbell, arrived at MCMAHON'S home. Campbell asked the other deputies to stand down. The deputy in the Gilley suit, JOHN DOE #1, then said he was going into the Plaintiff's home. MCMAHON told him he did not have permission to enter and that he did not want his home entered or searched. Two deputies, JOHN DOE #1 AND JOHN DOE #2, then searched the Plaintiffs home. During this time the ambulance began to move and STEPP thought MCMAHON had been killed or shot.

103. Next MCMAHON heard deputies saying they were going to take MCMAHON to DLC. (David Lawrence Center). Deputy Campbell who had spoken with MCMAHON told the other deputies, he did not think that it was necessary to Baker Act MCMAHON. Another deputy said, "It's not your call Chuck."

104. MCMAHON was then told he was being involuntarily committed for a 72 hour observation at a psychiatric facility. (Florida's Baker Act). There was no reason to "Baker Act" MCMAHON, he had complied with all of the officers' commands was not erratic or showing any signs of any trouble.

105. None of the Deputies spoke to MCMAHON about his condition, and in fact the only person who had spoken with MCMAHON, Campbell, advised the other deputies that he did not

think taking MCMAHON under the Baker Act was necessary.

106. There was minimal interaction with MCMAHON except the instructions to get on the ground, the threats to kill and the handcuffing, and the Baker Act requires an eye witness.

107. MCMAHON then asked for an ambulance which was stationed nearby so that he would be transported in a dignified manner.

108. MCMAHON also asked for this as an accommodation under the ADA as he believed that if an ambulance was on scene that transport in the ambulance would be dignified and proper. MCMAHON did not want to be committed and did protest and made it clear he was not a danger to himself or others and that he had not done anything that would suggest anything different.

MCMAHON'S requests for the ambulance and ADA accommodations were ignored.

109. MCMAHON also requested his medicine for several back injuries, or the ambulance, MCMAHON was denied his medicine. Title II of the ADA requires law enforcement agencies to make reasonable modifications in their policies, practices, or procedures that are necessary to ensure accessibility for individuals with disabilities, unless making such modifications would fundamentally alter the program or service involved. Law enforcement officers should be prepared to make reasonable modifications, by allowing detainees access to their medication. 28 C.F.R. § 35.150(b)(7).

110. MCMAHON was arrested under the Baker Act by ONE OF JOHN DOES OR OTHER NAMED DEFENDANT.

111. MCMAHON was placed in a cramped patrol car, handcuffed and visible during transport to his neighbors and the public in general.

112. ONE OF JOHN DOES OR OTHER NAMED DEFENDANT then told staff at the DLC that McMahon had killed his mother, chopped her into little bits and was suicidal. This was a complete fabrication and utterly false. The CCSO knew MCMAHON had not been home during the day because Deputy BUTLER had searched for MCMAHON at his residence earlier in the day. The CCSO did not search MCMAHON'S car nor the freshly dug dirt in the back yard where MCMAHON had been moving dirt from his back yard to the front. Nor was MCMAHON'S mother ever contacted. MCMAHON'S parents are long time residents of Collier County.  MCMAHON was then admitted to the David Lawrence Center for a 72 hour observation.

113. On July 2, 2008 MCMAHON was seen by a Doctor Benoit.  Dr Benoit first spoke to MCMAHON and then made several calls to witnesses and others involved with the events of July 1 2008.

114. The Doctor then called MCMAHON back into his office and told MCMAHON that he was going to immediately release MCMAHON and that he felt the CCSO was trying to provoke an incident in which MCMAHON may be killed or injured.

115. The Doctor advised MCMAHON to leave the area immediately and to remain with other persons until he was out of the area. He also advised MCMAHON that he was suffering from Post Traumatic Stress Disorder (PTSD)and that MCMAHON'S symptoms were likely to get much worse as a result of the involuntary committal and the SWAT team incident. MCMAHON was advised to seek help as soon as he was out of the area for the PTSD.

116. Then Plaintiff then left the facility and went home to pack. While packing a deputy from the CCSO called MCMAHON'S home looking for MCMAHON and asking where he was.

STEPP had answered the phone and did not give the deputy any information.

117. Fearing the CCSO had found out MCMAHON had been released early, MCMAHON did not finish packing and left the area with his brother's assistance.

118. Once out of the area, MCMAHON filed a Motion with this Court for a Restraining order. (Doc #119). This Motion was denied by this Court on the 10th of July 2008 (Doc # 120).

119. With knowledge of the denial of the Order (Doc 120) the CCSO (JOHN DOES 20-23) then went to the Plaintiffs residence on 7/11/2008 in search of MCMAHON. The CCSO did not have permission to enter the Plaintiffs property and the search was warrant less.

120. Again on July 29th 2008 the CCSO did a warrant less search of the Plaintiffs property in search of MCMAHON.

121. On July 29th 2008 MCMAHON received a call on his cell phone from a deputy JOLICUR. The Deputy said he was outside of the Plaintiffs home on the Plaintiffs property and ordered MCMAHON out of the home. MCMAHON told the deputy that he was not there and so he could not come out. The deputy said that he must be home because he had called a local telephone number. MCMAHON told the deputy that it was a cell phone and he was not there. The deputy insisted that MCMAHON come out of the house.

122. MCMAHON fearing a grenade being launched into his home in Naples came out of the friend's house he was in to find his friend who was cutting the lawn. MCMAHON thought if the deputy could hear the lawn mower he would know MCMAHON was not there at MCMAHON'S residence. The deputy said he could hear something but wanted to speak to MCMAHON'S friend.

123. MCMAHON gave his phone to his friend who assured the deputy that MCMAHON

was not there in Naples and was fine.

124. MCMAHON then again requested an accommodation under the ADA so as to avoid the warrant less searches or to help insure MCMAHON'S civil rights.

125. MCMAHON told the deputy not to trespass on the Plaintiffs property and asked for the names of the other officers who had accompanied deputy JOLICUR, JOHN DOES #s 3-8?. JOLICUR refused to say who was there and hung up on MCMAHON.

126. MCMAHON notified STEPP of the presence of the CCSO and she witnessed 5 patrol cars leaving the Plaintiffs residence.

On August 8th 2008 MCMAHON called Hunter's office and notified him that MCMAHON's and STEPP'S civil rights were being violated by his Deputies. Hunter did not respond.

127. On August 10, 2008 the CCSO under the direction of Deputy DAVID SIEBER, did another warrant less search of the Plaintiffs residence in search of MCMAHON.

In mid August MCMAHON was forced to rent a home in Massachusetts in order to avoid homelessness. This cost the Plaintiffs a great deal of money which they had to borrow. Living in Massachusetts has also cost the Plaintiffs a great deal more money. The Plaintiffs do not desire to live in Massachusetts. MCMAHON's wife, STEPP was forced to leave their home and her job in Naples FL because of the CCSO's threats and repeated searches.

128. On August 16, 2008 the CCSO under the direction of an unknown Deputy (JOHN DOE # 9), did another warrant less search of the Plaintiffs residence in search of MCMAHON.

129. On or about the 20th of August 2008, STEPP had to leave Naples out of fear of the CCSO. The CCSO had intimidated, coerced, interfered with, impeded, hindered, obstructed, and defeated STEPP out of the County.

130. STEPP had and has been listed as a witness in this action since 2006.

131. This caused STEPP and MCMAHON a great deal of additional expenses and most of STEPP and MCMAHON's property remained unprotected.

132. On August 26, 2008 the CCSO under the direction of an unknown Deputy (JOHN DOE #10), did another warrant less search of the Plaintiffs residence in search of MCMAHON.

133. On the 4th of September at about 12:43pm MCMAHON received a message from a Detective (JOHN DOE #11) from the CCSO asking about his relationship to STEPP. The deputy called from 239-252-8041. MCMAHON returned the call and left a message directing the Detective to the CCSO's outside Counsel. MCMAHON then received another call at about 5:24pm but did not answer.

134. On September 9, 2008 the CCSO did 2 warrant less searches of the Plaintiffs residence under the direction of Deputies STEVEN YOUNG and ROBERT CAPIZZI (badge #892) including one at 2236 hours at night.

135. On September 10, 2008 the CCSO did another warrant less search of the Plaintiffs residence under the direction of ROBERT CAPIZZI (badge #892) at about 1400 hours in the afternoon.

136. On September 10, 2008 at about 12:04pm MCMAHON received a call from the CCSO but they hung up when MCMAHON answered, and again at 12:12pm and again at 3:41pm and then at 4:01pm Deputy CAPIZZI called MCMAHON and told MCMAHON that he was looking for him and wanted to help him with the troubles he was having.

137. MCMAHON told the deputy to stop coming out to his residence and to stop calling him on false pretenses.

138. CAPIZZI said he only wanted to help and wanted to know if he could help with MCMAHON's bills from the David Lawrence Center and his Medical records.

139. MCMAHON told Deputy CAPIZZI that it was none of his business regarding his bills or medical records.

140. The deputy continued and asked MCMAHON what he wanted from the CCSO.

141. MCMAHON said to stop harassing him and to leave him alone. The call was becoming more and more terrifying to MCMAHON and his wife. MCMAHON'S wife, STEPP, asked the deputy how far did the Plaintiffs have to go as we would not be harassed or searched for.

142. CAPIZZI did not answer and only asked his question again.

143. MCMAHON then said what he wanted again and said, the CCSO could just pay the bill to the David Lawrence Center and to buy his home. MCMAHON was serious, as he feels he can never safely return for the purpose of regaining his home.

144. CAPIZZI thought it was a joke and again asked his question.

145. MCMAHON assured the deputy that this is what he wanted and he wanted to move on with his life in safety away from the CCSO.

146. CAPIZZI said he could see why MCMAHON had so much trouble with people.

147. MCMAHON being more and more stressed and fearing the CCSO then asked the deputy to at least accommodate MCMAHON under the ADA for the extreme stress he was under and to have patience with him.

148. The deputy said he would try to get MCMAHON'S medical records and address his billing questions with the David Lawrence Center.

148. MCMAHON told the deputy that he was not seeking his help except to stop harassing him and to stop the illegal searches.

149. CAPIZZI again said he could see why MCMAHON had so much difficulty. CAPIZZI said I am trying to help you and you just don't want to cooperate. CAPIZZI then hung up on MCMAHON.

150. On September 11, 2008 MCMAHON contacted the CCSO and spoke to HAMILTON (Supervisor) to complain about their actions, this resulted in another warrant less search of the Plaintiffs residence by JOHN DOE #12.

151. On September 12, 2008 at about 10:46am JOHN DOE #18of the CCSO called again and hung up on MCMAHON.

152. On September 16, 2008 at about 9:19am JOHN DOE #19 OF the CCSO called again and hung up on MCMAHON.

153. On September 16, 2008 at about 10:08am the CCSO called again and hung up on MCMAHON

154. On September 16, 2008 at about 2:07pm the CCSO called again and hung up on MCMAHON

155. On September 17, 2008 at about 2:42pm hours MCMAHON received a call from a Deputy CHRISTINE BATES (Investigator) from telephone number 239-530-9785. Deputy BATES told MCMAHON she was going to file misdemeanor criminal charges against MCMAHON for calling the DLC about his medical bills, she gave MCMAHON report # 26266 and then hung up on MCMAHON.

156. MCMAHON has only tried to complain about the CCSO'S involvement with his

medical care and their harassment against him. It is not a crime to complain about this activity yet MCMAHON now faces another baseless arrest for the same charges as the false arrest in this case at hand.

157. Each time the CCSO has called or contacted MCMAHON, MCMAHON has referred them to their outside Counsel.

158. MCMAHON has notified the Defendants Counsel of these activities, but only received a reply stating that all of these encounters were and are fabrications of MCMAHON. The Defendants Counsel have not taken any action to restrain their clients from harassing and violating the Plaintiffs rights.

159. MCMAHON has also contacted the CCSO's Internal Affairs Department know as the Professional Responsibilities Bureau (PRB). A THERESA WRIGHT in the PRB has advised MCMAHON not to return to Collier County and that he should just abandon his home, she then hung up on MCMAHON.

160. MCMAHON has attempted to contact the PRB but has repeatedly been hung up on by PEGGY DOE, thus denying MCMAHON equal access.

161. MCMAHON has also spoken with a Deputy TURNER in the PRB who did not take any action to prevent the wrongs from being done.

162. MCMAHON has also spoken with DIANE SULLIVAN in the PRB, SULLIVAN advised MCMAHON that he was not to call the PRB that they would not accept any of his complaints and that he should direct all of his concerns to Richard Guiffreda, Defense Counsel for LOPEZ.

163. Guiffreda has stated he does not represent anyone except LOPEZ and that it is

inappropriate to call him about other concerns with the CCSO.

164. In effect MCMAHON cannot secure any of his rights and the PRB and HUNTER had a duty to respond. SULLIVAN yelled and hung up on MCMAHON and had told him that the PRB would not address any issue at all with MCMAHON and told him he better learn to keep his mouth shut, thus denying MCMAHON any recourse for the wrongs of he CCSO.

165. TURNER, WRIGHT, SULLIVAN and PEGGY DOE knew wrongs were being committed, and had the power to prevent or aid in preventing the commission of the same, neglected and refused to take any action.

166. MCMAHON has recorded as much as possible regarding these events and has numerous hours of recordings that can prove without a doubt his plight.

167. MCMAHON suffers greatly every time he finds out the CCSO is looking for him, it brings on severe depression, anxiety, stress, panic as well as physical problems as a result of their actions including nausea, vomiting, uncontrolled shaking and headaches.

168. MCMAHON is receiving medical and psychological treatment for the conditions he faces for each act against him by the CCSO.

169. MCMAHON has been advised not to return to Naples by his Doctors and members of the CCSO, the Plaintiffs own a home in Naples and have to pay their mortgage and now have to pay rent in Massachusetts in order to have a safe place to live. The Plaintiffs want to leave their Naples home in an orderly manner and need to return in order to prepare and sell their home.

170. The Plaintiffs have to now pay for heat and the additional rent as well as the cost of moving some of their belongings from Florida to Massachusetts.

171. The Plaintiffs wife, STEPP has had to leave her job in Naples out of fear of the CCSO and their repeated warrant less searches for MCMAHON. The Plaintiff's wife, STEPP has now joined MCMAHON leaving the home in Naples unguarded from hurricanes, thieves and the CCSO.

172. The Plaintiffs now have to pay neighbors to watch their home as best as possible. The closest neighbor is about 1/4 mile from the Plaintiffs residence. The Plaintiffs live on a private road where the CCSO has been told not to trespass.

173. In September of 2008 MCMAHON again contacted Hunter about the violations of MCMAHON and STEPP'S civil rights, the request was ignored.

174. On or about the 11th of September 2008 MCMAHON spoke to a Deputy Supervisor, HAMILTON and advised him of the abuses he and STEPP faced from his subordinates. HAMILTON knew wrongs were being committed, and had the power to prevent or aid in preventing the commission of the same, neglected and refused to take any action.

175. MCMAHON has offered to turn himself into authorities in Massachusetts but the CCSO has requested he only turn himself into their offices even though there is no warrant for MCMAHON.

176. As of the 11th of September the CCSO has told MCMAHON there are no warrants for him.

177. MCMAHON has reported all of this activity to the Florida Department of Law Enforcement (FDLE) and the FBI in Boston and Naples, and the Florida Department of Children and Families (DCF), and the Massachusetts Department of Mental Health(MDMH) for investigation.

178. On September 18, 2008 at about 3:44pm hours MCMAHON received a call from Officer Thomas McGraw of the FDLE regarding his complaint against the CCSO. The Officer advised MCMAHON that he had spoken to several people at the CCSO and there were no pending charges against MCMAHON and they were not looking for him. The Officer then explained that based on his conversations with the CCSO that it was best not to return and to find another place to reside. He said that the Plaintiffs could hire a realty company and moving company to sell the house and move MCMAHON's remaining belongings to a warehouse until he found another place to reside.

179. MCMAHON explained that he lived on 4 acres in the Everglades and had many belongings around the property and that he did not think a moving company would be able to collect all of the things.

180. The Officer told MCMAHON he did not think it would be wise to return. The conversation then ended. MCMAHON has also been advised by DCF and MDMH not to return to Florida for his own safety.

181. MCMAHON submitted an Affidavit in support of his Emergency Motion of October 3, 2008 and since that time has received notice that yet another Deputy was on the Plaintiffs property in Naples looking for MCMAHON to make sure he was "ok". The Deputy (JOHN DOE #13) was told by a neighbor to leave and that he was trespassing.

182. MCMAHON also received a call from an investigator from the CCSO, CHRISTINE BATES. Deputy BATES left MCMAHON a message to call her, that she wanted to ask MCMAHON some questions.

183. MCMAHON has been fearful of speaking with this woman again as he felt she was

abusive in previous conversations and hung up on MCMAHON when he requested patience as an accommodation under the ADA. Ms BATES hung up on MCMAHON when she had spoken to him in the past and MCMAHON sees no reason to subject himself to even more stress.

184. Through the month of October 2008 JOHN DOE # 17 of the CCSO has continued to search the Plaintiffs property in Naples in search of MCMAHON

185. In October of 2008 MCMAHON again contacted Hunter about the violations of MCMAHON and STEPP'S civil rights, the request was ignored.

186. Because of the additional expenses the Plaintiffs now face they are unable to pay their mortgage on their home for September 2008, October 2008, and now November 2008. Their home is now in default with the bank and they are now facing foreclosure. The Plaintiffs have never gone behind on their mortgage until this time.

187. MCMAHON has contacted the CCSO attorney's office on various occasions (not Counsel in this case) to request his civil and ADA rights.

188. Again In November of 2008 MCMAHON again contacted Hunter about the violations of MCMAHON and STEPP'S civil rights, as of now has not received any response. HUNTER knew wrongs were being committed, and had the power to prevent the commission of the same, neglected and refused to take any action.

## SUMMARY

189. MCMAHON has been subjected to a malicious prosecution and conspiracy against him since LOPEZ conspired with VERICKER and the conspiracy was expanded with the issuance of the BOLO. Since the BOLO MCMAHON has been subjected to bogus traffic stops illegal searches and seizures and as of 2008 faced new threats of arrest and death. MCMAHON

has had his person seized by the CCSO. The CCSO has repeatedly searched the Plaintiff's property without warrant or cause and continues to do so. The CCSO has repeatedly called MCMAHON threatening him, costing him money on his cell phone, causing him injury and utter panic and severe emotional distress each time. MCMAHON had been warned by the Psychiatrist at DLC, the CCSO, FDLE, DCF, MDMH and others not to return to Florida. The Psychiatrist said he thought the CCSO was trying to provoke an incident in which MCMAHON may be injured or killed and the CCSO'S actions since that date have shown it to be true. The Plaintiffs are injured and continue to be injured at the hands of the CCSO. The CCSO'S actions have cost and continue to cost the Plaintiffs a great deal of money. The Plaintiffs will now fall behind on their mortgage as a result of the CCSO's actions. The Plaintiffs now have a great deal of additional medical bills as a result of the CCSO's actions. MCMAHON lost a tooth as a result of the CCSO and now suffers from PTSD everyday as a result. The Plaintiffs believe it would be foolish to return to Florida under such circumstances and no person would be or should be expected to endure such abuse, attacks and terrorism against ones self or family.

190. The Plaintiff's home in Florida has been permanently poisoned by the CCSO. The CCSO created this toxic environment for the Plaintiffs and they should be held accountable. STEPP has been forced to leave out of fear of the CCSO and MCMAHON's ability to represent himself in this action has been greatly reduced for lack of records, papers, and documents related to this case which remain in Naples.

191. Since 2003 MCMAHON has repeatedly requested to be accommodated under the ADA by the CCSO in order to avoid any misunderstandings, all of MCMAHON'S requests have been ignored.

192. On July 1, 2008 Hunter's Deputies and SWAT team were sent to MCMAHON's home.

193. The Deputies then had MCMAHON involuntarily commited to a psychiatric facility and made disgusting and utterly false allegation that MCMAHON had stated he killed his mother and chopped her into little bits and was suicidal.

194. MCMAHON repeatedly asked for an ambulance as he was being denied his medicine for numerous spinal injuries. MCMAHON also asked this as an accommodation under the ADA to be transported in the most dignified manner. His requests for the ambulance were not honored.

195. MCMAHON also made the same request to the psychiatric facility, the David Lawrence Center (DLC) for several hours and through the night and was repeatedly denied and only given more librium so he would not complain. MCMAHON was in extreme pain and his blood pressure rose and his body temperature fell. MCMAHON was not able to sleep and continued to get colder losing his body tempurature. MCMAHON had been taking 30mg of extended release Morphine 3 times a day (as prescribed by his Doctor) and the lack of these medicines caused MCMAHON much more pain and distress.

196. Again in October MCMAHON called Hunter's office with the same request which was also ignored. As well as his complaints to the PRB. MCMAHON has only been threatened for making requests.

197. MCMAHON has been directed by Richard Guiffreda, Counsel for defendant Lopez not to call his office about issues with the CCSO,  including the repeated searches of MCMAHON'S and STEPP'S property in Naples.   Mr Guiffreda said he would only discuss

issues which are contained the Amended Complaint filed in July 2007.

## ARGUMENT

198. The Plaintiffs have shown that they suffer from irreparable injuries everyday and the situation only gets worse without resolution. No single person could be expected to endure such a stressful situation without permanent and ongoing injury.

199. The Plaintiffs suffer losses everyday by not being able to live at their home in peace, the Plaintiffs have had to pay a significant additional amount of money for housing. The Plaintiffs now have to pay for heating oil, and propane and electric yet still must pay their electric bill in Naples FL at their residence in order to keep the home mold free. The Plaintiffs have had to pay moving expenses in order to find a safe place to live. The Plaintiff's home in Naples has now go into default and the Plaintiffs now face foreclosure.

200. Without maintenance the Plaintiff's home surely will suffer damages in the Everglades as well as the damages MCMAHON himself is having regarding medical bills including a bill for the involuntary committal of July 1, 2008.

201. MCMAHON has repeatedly tried to resolve this with the Counsel of record for the Defendants but has only received a letter stating it was a fabrication. Giving additional notices only provokes negative responses and additional illegal searches. It is clear that the CCSO will continue and continue to search the Plaintiffs residence without warrant or cause and it is a pattern and practice of the CCSO to continue to do so in order to deprive the Plaintiffs of their rights be secure in their home and belongs from illegal search or seizure and to due process in this case.

202. The Defendants have violated the Plaintiffs rights under the 1st, 4th, 14th,

Amendments to the Constitution of the United States and 42 U.S.C. Sections 1983, 1985 parts (2) and (3), 1986, 12132 and 12203 and the laws of Florida, as various defendants have intimidated witness's to a Federal lawsuit to leave the area, have conspired against them.

## FEDERAL CLAIMS

### COUNT I

Violation of MCMAHON'S Civil Rights by LOPEZ

Defendant LOPEZ had Plaintiff MCMAHON falsely arrested and falsely imprisoned and told MCMAHON he could not freely speak to his Doctors and did not accommodate MCMAHON for his disability and therefore Defendant LOPEZ intentionally or recklessly disregarded the constitutional rights of Plaintiff MCMAHON secured by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and U.S.C. 42 Section 12132 and 12203

As a direct and proximate result of the wrongful conduct by LOPEZ as alleged above, Plaintiff, MCMAHON, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant LOPEZ deprived Plaintiff MCMAHON of his right to be free from unlawful restraint and detention against his will and otherwise deprived Plaintiff MCMAHON of due process of law in violation of the Fourth, and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together with interest against Defendant LOPEZ;

B. That MCMAHON be awarded punitive damages against Defendant LOPEZ.

## COUNT II

Malicious Prosecution of MCMAHON by LOPEZ

Plaintiff sues Defendant LOPEZ for Malicious Prosecution pursuant to the supplemental jurisdiction of this Court and says:

The arrest orchestrated by LOPEZ of the Plaintiff MCMAHON, was unreasonable, unwarranted, and malicious under the circumstances in this case and against the laws of Florida.

The arrest of MCMAHON orchestrated by LOPEZ was based on information received outside of the normal practice or procedure of the Sheriff's Office and was not authenticated with due process.

Plaintiff MCMAHON was arrested based on LOPEZ'S false information that LOPEZ did not authenticate and was not the normal procedure of his department.

LOPEZ told MCMAHON not to call the Clinic or speak to his Doctor ever again or he would be arrested and MCMAHON honored LOPEZ'S orders.

In having Plaintiff MCMAHON taken unto custody without using the normal procedure for repeated or harassing telephone calls, Defendant LOPEZ willfully violated MCMAHON's right to be free from Malicious Prosecution .

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together with interest against Defendant LOPEZ;

## COUNT III

Violation of MCMAHON'S Civil Rights by HUNTER

The policy or custom of Defendant HUNTER resulted in Plaintiff MCMAHON'S false arrest and false imprisonment under Florida's Baker Act on the 1st of July 2008. HUNTER willfully failed to adequately train his employees so as to avoid the allegations in this complaint and as a result recklessly disregarded the constitutional rights of MCMAHON secured by the Fourth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. sec. 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

HUNTER was put on notice with the 1st ADA request of the 22nd of December 2003 and again with the filing of an informal complaint against LOPEZ and again with his issuance of the BOLO and again with the original filing of this complaint and with the filing of the amended complaint in this action and with MCMAHON'S ADA requests of the 1st of July 2008 and with his ADA request on the 29th of July 2008 and with numerous requests to his deputies and with 4 telephone calls to his office from August of 2008 through November 2008 and with the same request to the CCSO attorney's office. MCMAHON has never been accommodated in any manner and the CCSO has never entered into an good faith interactive process.

As a direct and proximate result of the wrongful conduct by HUNTER as alleged above, Plaintiff, MCMAHON, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant HUNTER deprived Plaintiff MCMAHON of his right to be

free from unlawful restraint and detention against his will and otherwise deprived Plaintiff MCMAHON of due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory damages together with interest against Defendant HUNTER;

B. That the Plaintiffs be awarded punitive damages against Defendant HUNTER.

## COUNT IV

Malicious Prosecution of MCMAHON by HUNTER (arrest of 3/24/2004)

Plaintiff sues Defendant HUNTER for false arrest pursuant to the supplemental jurisdiction of this Court and says:

The arrest by HUNTER of MCMAHON on the 31st of March 2004, was unreasonable, unwarranted, and malicious under the circumstances in this case.

HUNTER willfully failed to provide an adequate communication system for his employees, or any accommodation under the ADA for MCMAHON this resulted in Plaintiff MCMAHON'S false arrest.

HUNTER failed to provide adequate training regarding the questioning of possible mentally ill persons resulting in Plaintiff MCMAHON'S false arrest on unwarranted charges on the 31st of March 2004 despite MCMAHON making an ADA request on the 22nd of December 2003.

The policy or custom of HUNTER resulted in the false arrest of MCMAHON in violation of MCMAHON's rights secured under the Constitution of the United

States and 42 U.S.C. sec. 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory damages together with interest against Defendant HUNTER:

## COUNT V

False Arrest by Hunter (arrest of 7/1/2008)

Plaintiff sues Defendant HUNTER for false arrest pursuant to the supplemental jurisdiction of this Court and says:

The arrest by HUNTER of MCMAHON, was unreasonable, unwarranted, and malicious under the circumstances in this case.

HUNTER willfully failed to provide an adequate communication system for his employees, or any accommodation under the ADA for MCMAHON this resulted in Plaintiff MCMAHON'S false arrest under the Baker Act.

HUNTER failed to provide adequate training regarding the questioning of possibly mentally ill persons resulting in Plaintiff MCMAHON'S false arrest on unwarranted charges on the 1st of July 2008 despite MCMAHON making repeated ADA requests.

The policy or custom of HUNTER resulted in the false arrest of MCMAHON in violation of MCMAHON's rights secured under the Constitution of the United States and 42 U.S.C. sec. 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory damages together

with interest against Defendant HUNTER:

## COUNT VI

Permanent Injunctive Relief for MCMAHON by HUNTER;

A permanent injunction forcing HUNTER to enter into a good faith interactive process to achieve an accommodation in accordance with the ADA with MCMAHON.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That HUNTER accommodate MCMAHON under the ADA

## COUNT VII

Violation of MCMAHON'S Civil Rights by LOPEZ

Defendant LOPEZ had Plaintiff MCMAHON falsely arrested and falsely imprisoned and told MCMAHON he could not freely speak to his Doctors and therefore Defendant LOPEZ intentionally or recklessly disregarded the constitutional rights of Plaintiff MCMAHON secured by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and U.S.C. 42 Section 12132 AND 12203

As a direct and proximate result of the wrongful conduct by LOPEZ as alleged above, Plaintiff, MCMAHON, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant LOPEZ deprived Plaintiff MCMAHON of his right to be free from unlawful restraint and detention against his will and otherwise deprived Plaintiff MCMAHON of due process of law in violation of the Fourth, and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together with interest against

Defendant LOPEZ;

B. That MCMAHON be awarded punitive damages against Defendant LOPEZ.

## COUNT VIII

Malicious Prosecution of MCMAHON by LOPEZ

Plaintiff sues Defendant LOPEZ for false arrest pursuant to the supplemental

jurisdiction of this Court and says:

The arrest orchestrated by LOPEZ of the Plaintiff MCMAHON, was unreasonable,

unwarranted, and malicious under the circumstances in this case and against the laws of Florida.

The arrest of MCMAHON orchestrated by LOPEZ was based on information

received outside of the normal practice or procedure of the Sheriff's Office and was not

authenticated with due process.

Plaintiff MCMAHON was arrested based on LOPEZ'S false information that

LOPEZ did not authenticate and was not the normal procedure of his department.

LOPEZ told MCMAHON not to call the Clinic or speak to his Doctor ever again

or he would be arrested and MCMAHON honored LOPEZ'S orders.

In having Plaintiff MCMAHON taken unto custody without using the normal procedure

for repeated or harassing telephone calls, Defendant LOPEZ willfully violated MCMAHON's

right to be free from false arrest.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together with interest against

Defendant LOPEZ;

## COUNT IX

False Imprisonment-of MCMAHON by HUNTER

Plaintiff sues Defendant HUNTER for false imprisonment pursuant to the supplemental jurisdiction of this Court and says:

On or about the 1st of July 2008, Plaintiff, MCMAHON, was taken to the DLC for involuntary committal, MCMAHON protested but did not have any due process rights as the arrest was under Florida's Baker Act.

MCMAHON protested to HUNTER that the imprisonment was against his will and stated that he had requested only his civil and ADA rights

HUNTER'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest or to accommodate MCMAHON under the ADA and a refusal to properly investigate an internal complaints, lawsuits and phone calls by MCMAHON.

Plaintiff was confined against his will by HUNTER and such confinement was malicious and unreasonable under the circumstances and resulted in injury to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, HUNTER knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:
(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant HUNTER had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

Defendant HUNTER had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory damages together with interest against Defendant HUNTER

## COUNT X

Conspiracy-against MCMAHON by LOPEZ

As a result of concerted unlawful and malicious conspiracy of Defendants LOPEZ, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and

the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 12132 and 12203.

LOPEZ contacted VERICKER when he learned of an internal complaint against him filed by Plaintiff MCMAHON. LOPEZ conspired with VERICKER to free himself of the allegations in the internal complaint.

MCMAHON had fully complied with LOPEZ'S orders.

As a result of the conspiracy of LOPEZ Plaintiff was confined against his will and such confinement was malicious and unreasonable under the circumstances and resulted in injury to MCMAHON and deprivation of his liberty

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together with interest against Defendant LOPEZ;

## COUNT XI

Conspiracy-against MCMAHON by HUNTER

As a result of concerted unlawful and malicious conspiracy of Defendants HUNTER, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

HUNTER'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest and a refusal to properly investigate an internal complaints, phone calls and lawsuits by MCMAHON

and the refusal to accommodate MCMAHON under the ADA

MCMAHON was confined and drugged with Librium and other unknown medicines against his will by HUNTER and such confinement was malicious and unreasonable under the circumstances and resulted in injury including the loss of a tooth and severe emotional trauma to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, HUNTER knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning  a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant HUNTER had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

Defendant HUNTER had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant HUNTER

## COUNT XII

Conspiracy against MCMAHON by FURTADA,

As a result of concerted unlawful and malicious conspiracy of Defendants FURTADA, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986. Section 12203 and Section 12132.

FURTADA was the dispatcher whom MCMAHON spoke to on the 1st of July, 2008,

FURTADA conspired with others in her office (Does 14 and 15) to deprive MCMAHON of his civil and ADA rights and failed or neglected to prevent others from violating MCMAHON'S rights. FURTADA was in communication at the time with members of the SWAT Team (Does 24+), JOLICUR, BUTLER and others. FURTADA had the ability to prevent an armed confrontation and failed to do so.

Instead FURTADA lied to MCMAHON creating a stand off situation that MCMAHON was unaware of. FURTADA knew MCMAHON was seeking his rights under the ADA and failed to accommodate MCMAHON and interfered with his ADA and civil rights.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants FURTADA.

## COUNT XIII

Conspiracy against MCMAHON by JOLICUR.

As a result of concerted unlawful and malicious conspiracy of Defendants JOLICUR, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) section 1986, Section 12203 and Section 12132.

JOLICUR was in communication with FURTADA and others and was aware that MCMAHON was only seeking his civil and ADA rights. JOLICUR called MCMAHON'S voice mail on the 1st of July 2008 and mentioned MCMAHON'S phone call to the CCSO in which he was requesting an accommodation under the ADA.

JOLICUR stated he was there at the Plaintiffs home and was responding to MCMAHON'S call and that he was not going to leave until MCMAHON had spoken with him. JOLICUR stated MCMAHON was not in trouble but needed to come out of his home.

JOLICUR conspired with others in MCMAHON'S driveway to cause the illegal arrest and detention of MCMAHON under Florida's Baker Act.

JOLICUR searched the Plaintiffs property without a warrant on the 1st of July 2008.

JOLICUR again searched the Plaintiffs property on the 29th of July 2008 without any warrant and without an emergency situation and had been notified not to trespass on the

Plaintiffs property.

JOLICUR knew MCMAHON was seeking his rights under the ADA and failed to accommodate MCMAHON and instead discriminated against MCMAHON for his disability or perceived disability.

JOLICUR retaliated against, interfered with and intimidated MCMAHON for seeking his ADA and civil rights.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant JOLICUR.

## COUNT XIV

Conspiracy against MCMAHON by BUTLER.

As a result of concerted unlawful and malicious conspiracy of Defendant, BUTLER, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

BUTLER did warrant less searches of the Plaintiffs property on the 1st of July a minimum of 2 times.

BUTLER had stopped MCMAHON as a welfare check just weeks earlier without cause. BUTLER took part in the bogus stop of MCMAHON a year earlier and refused his proof of insurance during the stop and mentioned that there was NO conspiracy against MCMAHON and said she could prove it by showing MCMAHON her computer screen. BUTLER knew

MCMAHON was seeking his rights under the ADA and failed to accommodate MCMAHON

and interfered and intimidated with his ADA and civil rights

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together

with interest against Defendant, BUTLER

COUNT XV

Conspiracy against MCMAHON by JOHN DOE 1

As a result of concerted unlawful and malicious conspiracy of Defendant JOHN DOE 1,

MCMAHON was deprived of both his liberty without due process of law and his right to equal

protection of the laws, and the due course of justice was impeded, in violation of the Fourth and

Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983,

1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOE 1 Threatened to deprive MCMAHON of his right to life. JOHN DOE 1

stated he was going to kill MCMAHON without cause. JOHN DOE 1 did a search without any

warrant of the Plaintiffs home.

JOHN DOE 1 was told he did not have permission to search the home or to enter it for

any reason. JOHN DOE 1 ignored MCMAHON'S rights and continued to search the Plaintiffs

home. MCMAHON protested the search several times but all requests were ignored.

JOHN DOE 1 conspired with others in MCMAHON'S driveway to cause the illegal

arrest and detention of MCMAHON under Florida's Baker Act.

JOHN DOE 1 intimidated, coerced, interfered with, retaliated against and threatened

MCMAHON for seeking his ADA and civil rights.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, JOHN DOE 1.

## COUNT XVI

Conspiracy against MCMAHON by JOHN DOE 2

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOE 2, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

JOHN DOE 2, did a search without any warrant of the Plaintiffs home.

JOHN DOE 2 was told he did not have permission to search the home or to enter it for any reason. JOHN DOE 2 ignored MCMAHON'S rights and continued to search the Plaintiffs home. MCMAHON protested the search several times but all requests were ignored.

JOHN DOE 2 conspired with others in MCMAHON'S driveway to cause the illegal arrest and detention of MCMAHON under Florida's Baker Act.

JOHN DOE 2 intimidated, interfered with, MCMAHON for seeking his ADA and civil rights.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, JOHN DOE 2.

## COUNT XVII

Conspiracy against MCMAHON by JOHN DOE 14.

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOE 14, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOE 14 was a dispatcher who FURTADA spoke to on the 1st of July, 2008,

JOHN DOE 14 conspired with others AND FURTADA in their office (FURTADA and DOE 15) to deprive MCMAHON of his civil and ADA rights and failed or neglected to prevent others from violating MCMAHON'S rights.

JOHN DOE 14 was in communication at the time of MCMAHON'S call with members of the SWAT Team,(Does 24+) JOLICUR, BUTLER and others. JOHN DOE 14 had the ability to prevent an armed confrontation and failed to do so.

JOHN DOE 14 interfered with MCMAHON'S ADA and civil rights.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, JOHN DOE 14.

## COUNT XVIII

Conspiracy against MCMAHON by JOHN DOE 15.

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOE 15, MCMAHON was deprived of both his liberty without due process of law and his right to

equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOE 15 was a dispatcher who FURTADA spoke to on the 1st of July, 2008, JOHN DOE 15 conspired with others AND FURTADA in their office (FURTADA and DOE 14) to deprive MCMAHON of his civil rights and failed or neglected to prevent others from violating MCMAHON'S rights.

JOHN DOE 15 was in communication at the time of MCMAHON'S call with members of the SWAT Team,(Does 24+) JOLICUR, BUTLER and others.

JOHN DOE 15 had the ability to prevent an armed confrontation and failed to do so. JOHN DOE 15 interfered with MCMAHON'S ADA and civil rights

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, JOHN DOE 15.

## COUNT XIX

Conspiracy against MCMAHON by JOHN DOES 24 TO UNKNOWN

As a result of concerted unlawful and malicious conspiracy of Defendants, JOHN DOES 24 TO UNKNOWN,  MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOES 24 TO UNKNOWN, knowingly went into disguise on the Plaintiffs

property on the 1st of July 2008 for the purpose of depriving MCMAHON of his civil rights and threatened MCMAHON at gun point in order to secure an illegal search of the Plaintiffs property and conspired with others to cause the illegal arrest and detention of MCMAHON under Florida's Baker Act.

MCMAHON requested to be accommodated under the ADA so as to avoid the situation that he was in, MCMAHON had only sought his rights under the law and was deprived of his liberty and ADA and civil rights as a direct result of JOHN DOES 24+ failure to respond to MCMAHON'S ADA requests.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, JOHN DOES 24 to unknown.

COUNT XX

Conspiracy against MCMAHON by BUTLER

As a result of concerted unlawful and malicious conspiracy of Defendant, BUTLER, MCMAHON was deprived of he right to equal protection of the laws, and the due course of justice was impeded, MCMAHON was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

BUTLER did a search of MCMAHON'S property without any warrant or emergency twice on the 1st of July 2008

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together

with interest against Defendant  BUTLER.

## COUNT XXI

Conspiracy against MCMAHON by JOLICUR

As a result of concerted unlawful and malicious conspiracy of Defendant,  JOLICUR, MCMAHON was deprived of he right to equal protection of the laws, and the due course of justice was impeded, MCMAHON was coerced or otherwise threatened to leave her home in violation of the Fourth  Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOLICUR did a search of MCMAHON'S property without any warrant or emergency on the 1st and 29th of July 2008.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant JOLICUR.

## COUNT XXII

Conspiracy against MCMAHON by SIEBER

As a result of concerted unlawful and malicious conspiracy of Defendant, SIEBER, MCMAHON was deprived of he right to equal protection of the laws, and the due course of justice was impeded in violation of the Fourth  Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3),  section 1986, Section 12203 and Section 12132.

SIEBER did a search of MCMAHON'S property without any warrant or emergency on the 10th of August 2008.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, SIEBER.

## COUNT XXIII

Conspiracy against MCMAHON by JOHN DOES 3-9

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOES 3-9, MCMAHON was deprived of he right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOES 3-9 did a search of MCMAHON'S property without any warrant or emergency on the 29th of July 2008.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants JOHN DOES 3-9.

## COUNT XXIV

Conspiracy against McMahon by John Does 24+

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOES 24+, MCMAHON was deprived of he right to equal protection of the laws, and the due course of justice was impeded, MCMAHON was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3), section 1986, Section 12203 and Section 12132.

JOHN DOES 24+ did a search of MCMAHON'S property without any warrant or

emergency on the 1st of July 2008.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants JOHN DOES 24+.

## COUNT XXV

False Arrest- of MCMAHON by ONE OF JOHN DOES OR OTHER NAMED DEFENDANT.

Plaintiff sues Defendant ONE OF JOHN DOES OR OTHER NAMED DEFENDANT for false arrest pursuant to the supplemental jurisdiction of this Court and says:

The arrest orchestrated by ONE OF JOHN DOES OR OTHER NAMED DEFENDANT of the MCMAHON, was unreasonable, unwarranted, and malicious under the circumstances in this case and against the laws of Florida.

The arrest of MCMAHON orchestrated by ONE OF JOHN DOES OR OTHER NAMED DEFENDANT was based unauthenticated information and without due process.

ONE OF JOHN DOES OR OTHER NAMED DEFENDANT denied MCMAHON his Right To Individual Dignity (Florida Statute Section 394.459 (1))

MCMAHON posed no threat, which was verified by a Deputy on scene and was placed in handcuffs and transported as a prisoner in a CCSO patrol car.

MCMAHON had requested to be transported in dignity by an ambulance which was available and on scene.

MCMAHON did not display any behavior that would have indicated he was a danger to himself or others.

MCMAHON'S arrest by ONE OF JOHN DOES OR OTHER NAMED DEFENDANT

under the Baker Act was for malicious purposes and not for any mental health emergency.

In taking MCMAHON unto custody ONE OF JOHN DOES OR OTHER NAMED

DEFENDANT willfully violated MCMAHON's right to be free from false arrest.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That MCMAHON be awarded compensatory damages together

with interest against ONE OF JOHN DOES OR OTHER NAMED DEFENDANT

## COUNT XXVI

Conspiracy-against MCMAHON by TURNER

As a result of concerted unlawful and malicious conspiracy of Defendant TURNER,

MCMAHON was deprived of both his liberty without due process of law and his right to equal

protection of the laws, and the due course of justice was impeded, in violation of the Fourth and

Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983,

1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

TURNER'S actions were willful and malicious in that they were based on a

refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest and a

refusal to properly investigate an internal complaints  and the refusal to accommodate

MCMAHON under the ADA

MCMAHON was confined and drugged with Librium and other unknown medicines

against his will  and such confinement was malicious and unreasonable under the circumstances

and resulted in injury including the loss of a tooth and severe emotional trauma to MCMAHON

and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, TURNER

knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant TURNER had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

Defendant TURNER had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant TURNER

Page 55 of 73

COUNT XXVII

Conspiracy-against MCMAHON by SULLIVAN

As a result of concerted unlawful and malicious conspiracy of Defendants SULLIVAN, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

SULLIVAN'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest and a refusal to properly investigate an internal complaints and phone calls by MCMAHON and the refusal to accommodate MCMAHON under the ADA

MCMAHON was confined and drugged with Librium and other unknown medicines against his will and such confinement was malicious and unreasonable under the circumstances and resulted in injury including the loss of a tooth and severe emotional trauma to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, SULLIVAN knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:
(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

Page 56 of 73

(b) unlawfully and maliciously arresting, imprisoning a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant SULLIVAN had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.,

Defendant SULLIVAN had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant SULLIVAN

## COUNT XXVIII

Conspiracy-against MCMAHON by PEGGY DOE

As a result of concerted unlawful and malicious conspiracy of Defendants PEGGY DOE, MCMAHON was deprived of both his liberty without due process of law and his right to equal

protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

PEGGY DOE'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest and a refusal to properly investigate an internal complaints and phone calls by MCMAHON and the refusal to accommodate MCMAHON under the ADA

MCMAHON was confined and drugged with Librium and other unknown medicines against his will  and such confinement was malicious and unreasonable under the circumstances and resulted in injury including the loss of a tooth and severe emotional trauma to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, PEGGY DOE knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning  a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant PEGGY DOE had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendant.

PEGGY DOE had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant PEGGY DOE

## COUNT XXIV

Conspiracy-against MCMAHON by THERESA WRIGHT

As a result of concerted unlawful and malicious conspiracy of Defendants THERESA WRIGHT, MCMAHON was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of Justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

THERESA WRIGHT'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available prior to MCMAHON'S arrest and a refusal to properly investigate an internal complaints and phone calls by MCMAHON and the refusal to accommodate MCMAHON under the ADA

MCMAHON was confined and drugged with Librium and other unknown medicines against his will and such confinement was malicious and unreasonable under the circumstances and resulted in injury including the loss of a tooth and severe emotional trauma to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, THERESA WRIGHT knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant THERESA WRIGHT had knowledge or, had he diligently exercised duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendant.

THERESA WRIGHT had power to prevent or aid in preventing the commission of said

wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant THERESA WRIGHT

## COUNT XXX

Conspiracy-against MCMAHON by HAMILTON

As a result of concerted unlawful and malicious conspiracy of Defendant HAMILTON, MCMAHON was deprived his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

HAMILTON'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence available and a refusal to properly investigate an internal complaints  and the refusal to accommodate MCMAHON under the ADA and resulted in injury including  severe stress to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, HAMILTON knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant officers in their duties to refrain from: (a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and

Page 61 of  73

immunities,

(b) unlawfully and maliciously arresting, imprisoning a citizen

who was acting in accordance with his constitutional and statutory rights,

privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to

Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights,

privileges, and immunities.

Defendant HAMILTON had knowledge or, had he diligently exercised duties

to instruct, supervise, control, and discipline on a continuing basis, should have

had knowledge that the wrongs conspired to be done, as heretofore alleged, were

about to be committed.

Defendant HAMILTON had power to prevent or aid in preventing the commission of

said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with

gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages

together with interest against Defendant HAMILTON

### COUNT XXXI

Conspiracy-against MCMAHON by BATES

As a result of concerted unlawful and malicious conspiracy of Defendant BATES,

MCMAHON was deprived of his right to equal protection of the laws, and the due course of

Page 62 of 73

justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sections, 1983, 1985, Parts (2) and (3), 1986, Section 12203 and Section 12132.

BATES'S actions were willful and malicious in that they were based on a refusal to confirm the circumstances and evidence and a refusal to properly investigate and the refusal to accommodate MCMAHON under the ADA

BATES actions were malicious and unreasonable under the circumstances and resulted in injury and severe stress to MCMAHON and deprivation of his liberty.

Acting under color of law and pursuant to official policy or custom, BATES knowingly, recklessly, or with gross negligence failed to investigate the circumstances and failed to accommodate MCMAHON a failed to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously threatening arrest, imprisonment of a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

©) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendant BATES had knowledge or, had She diligently exercised her duties on a

continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed..

Defendant BATES had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

WHEREFORE, Plaintiff MCMAHON, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant BATES.

## COUNT XXXII

Violation of Civil Rights- against MCMAHON STEPP by YOUNG

Defendant YOUNG did illegally search the Plaintiffs MCMAHON and STEPP'S property without any warrant or emergency situation and therefore Defendant YOUNG intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by YOUNG as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant YOUNG deprived Plaintiff MCMAHON of his right to be free from unlawful search against his will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together

with interest against Defendant YOUNG;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant YOUNG.

## COUNT XXXIII

Violation of Civil Rights- against MCMAHON STEPP by CAPIZZI

Defendant CAPIZZI did illegally search the Plaintiffs MCMAHON and STEPP property without any warrant or emergency situation and therefore Defendant CAPIZZI intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by CAPIZZI as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant CAPIZZI deprived Plaintiff MCMAHON of his right to be free from unlawful search against his will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest against Defendant CAPIZZI;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant CAPIZZI.

## COUNT XXXIV

Violation of Civil Rights-against McMahon Stepp by John Does 20-23

Defendant JOHN DOES 20-23 did illegally search the Plaintiffs MCMAHON and

STEPP property without any warrant or emergency situation and therefore Defendant JOHN DOES 20-23 intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by JOHN DOES 20-23 as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant JOHN DOES 20-23 deprived Plaintiff MCMAHON and STEPP of their right to be Free from unlawful search against their will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest against Defendant JOHN DOES 20-23;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant JOHN DOES 20-23

## COUNT XXXV

Violation of Civil Rights-against MCMAHON Stepp by John Doe 10

Defendant JOHN DOE 10 did illegally search the Plaintiffs MCMAHON and STEPP property without any warrant or emergency situation and therefore Defendant JOHN DOE 10 intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by JOHN DOE 10 as alleged

above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant JOHN DOE 10 deprived Plaintiff MCMAHON and STEPP of their right to be free from unlawful search against his will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest against Defendant JOHN DOE 10;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant JOHN DOE 10.

## COUNT XXXVI

Violation of Civil Rights- against McMahon Stepp by John Doe 12

Defendant JOHN DOE 12 did illegally search the Plaintiffs MCMAHON and STEPP property without any warrant or emergency situation and therefore Defendant JOHN DOE 12 intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by JOHN DOE 12 as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant JOHN DOE 12 deprived Plaintiff MCMAHON and STEPP of their right to be free from unlawful search against his will and otherwise deprived MCMAHON

and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest against Defendant JOHN DOE 12;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant JOHN DOE 12.

## COUNT XXXVII

Violation of Civil Rights- against MCMAHON Stepp by John Doe 13

Defendant JOHN DOE 13 did illegally search the Plaintiffs MCMAHON and STEPP property without any warrant or emergency situation and therefore Defendant JOHN DOE 13 intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by JOHN DOE 13 as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant JOHN DOE 13 deprived Plaintiff MCMAHON and STEPP of their right to be free from unlawful search against his will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest

against Defendant JOHN DOE 13;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant JOHN DOE 13.


## COUNT XXXVIII

Violation of Civil Rights- against MCMAHON Stepp by John Doe 17

Defendant JOHN DOE 17 did illegally search the Plaintiffs MCMAHON and STEPP property without any warrant or emergency situation and therefore Defendant JOHN DOE 17 intentionally or recklessly disregarded the constitutional rights of MCMAHON and STEPP secured by the Fourth, Amendment to the Constitution of the United States.

As a direct and proximate result of the wrongful conduct by JOHN DOE 17 as alleged above, MCMAHON and STEPP, suffered pain and suffering, mental anguish and a loss of capacity for enjoyment of life.

The acts of Defendant JOHN DOE 17 deprived Plaintiff MCMAHON and STEPP of their right to be free from unlawful search against his will and otherwise deprived MCMAHON and STEPP of due course of law in violation of the Fourth Amendment to the Constitution of the United States.

WHEREFORE, MCMAHON and STEPP, Prays:

A. That MCMAHON and STEPP be awarded compensatory damages together with interest against Defendant JOHN DOE 17;

B. That MCMAHON and STEPP be awarded punitive damages against Defendant JOHN DOE 17.

COUNT XXXIV

Conspiracy against Stepp by Butler

As a result of concerted unlawful and malicious conspiracy of Defendant, BUTLER, STEPP was deprived of he right to equal protection of the laws, and the due course of justice was impeded, STEPP was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

BUTLER did a search of STEPP'S property without any warrant or emergency twice on the 1st of July 2008 and intimidated STEPP so as to leave her home for safety.

BUTLER detained STEPP without cause on the 1st of July 2008.

BUTLER seized STEPP'S cell phone without warrant or cause and in a threatening manner on the 1st of July 2008 and intimidated STEPP so as to leave her home for safety.

WHEREFORE, Plaintiff STEPP, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant BUTLER.

COUNT XL

Conspiracy against Stepp by Jolicur

As a result of concerted unlawful and malicious conspiracy of Defendant, JOLICUR, STEPP was deprived of he right to equal protection of the laws, and the due course of justice was impeded, STEPP was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

Page 70 of 73

JOLICUR did a search of STEPP'S property without any warrant or emergency on the 1st and 29th of July 2008 and intimidated STEPP so as to leave her home for safety.

WHEREFORE, Plaintiff STEPP, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants JOLICUR.

## COUNT XLI

Conspiracy against Stepp by Sieber

As a result of concerted unlawful and malicious conspiracy of Defendant, SIEBER, STEPP was deprived of he right to equal protection of the laws, and the due course of justice was impeded, STEPP was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

SIEBER did a search of STEPP'S property without any warrant or emergency on the 10th of August 2008 and intimidated STEPP so as to leave her home for safety.

WHEREFORE, Plaintiff STEPP, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendant, SIEBER.

## COUNT XLII

Conspiracy against Stepp by John Does 3-9

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOES 3-9, STEPP was deprived of he right to equal protection of the laws, and the due course of justice was impeded, STEPP was coerced or otherwise threatened to leave her home in violation

of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

JOHN DOES 3-9 did a search of STEPP'S property without any warrant or emergency on the 29th of July 2008 and intimidated STEPP so as to leave her home for safety.

WHEREFORE, Plaintiff STEPP, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants JOHN DOES 3-9.

## COUNT XLIII

Conspiracy against Stepp by John Does 24+

As a result of concerted unlawful and malicious conspiracy of Defendant, JOHN DOES 24+, STEPP was deprived of he right to equal protection of the laws, and the due course of justice was impeded, STEPP was coerced or otherwise threatened to leave her home in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. sections. 1983, 1985 parts (2) and (3) and section 1986.

JOHN DOES 24+ did a search of STEPP'S property without any warrant or emergency on the 1st of July 2008 and intimidated STEPP so as to leave her home for safety.

WHEREFORE, Plaintiff STEPP, Prays:

A. That the Plaintiffs be awarded compensatory and punitive damages together with interest against Defendants JOHN DOES 24+.

PLAINTIFFS DEMAND TRIAL BY JURY.
This 18 day of November 2008
by Plaintiffs, DANIEL W MCMAHON AND CAROLYN STEPP

I hereby certify under the penalties of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully Submitted by Daniel W McMahon (Plaintiff)

on this __/8__ day of November 2008

I hereby certify under the penalties of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully Submitted by Carolyn Stepp (Plaintiff)

on this __18__ day of November 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing (Daniel W McMahon v Don Hunter et al)Was mailed to Purdy, Jolly, Giuffreda & Barranco PA attn Barranco at 2455 E. Sunrise Blvd Suite 1216 Ft Lauderdale FL 33304 for . Lopez..

This __/8__ day of November 2008

Daniel W McMahon Carolyn Stepp (plaintiff)

PO Box 2516 Worcester MA 01613
646-303-8693